IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF KANSAS

TONY EUGENE THOMAS, deceased,
By and through his heirs at law and GINGER
PACE, Special Friend for the ESTATE OF
TONY EUGENE THOMAS, S. DOE,
A minor child and S.H. Doe, a Minor child,
           Plaintiffs

    -vs-

JOHN DOUGLASS, Chief of the City of         Case No. 2:10-CV-2477
Overland Park Police Department and as
An individual

THERESA POAGE, Police Officer of the
City of Overland Park, Kansas; and

ANDREW EGER, Police Officer of the
City of Overland Park, Kansas,
           Defendants

## AMENDED PETITION FOR DAMAGES

COME NOW the Plaintiffs and for their cause of action, state and allege as follows:

### JURISDICTION

This is a civil action brought by the Plaintiff against the Defendants alleging damages arising out of the wrongful death of Tony Eugene Thomas on December 10, 2006.

The amount in controversy exceeds $75,000, exclusive of costs and interest. All conditions precedent have been performed or have occurred. To wit, defendant, City of Overland Park and City of Overland Park Police Department, by and through its City Manager for the City of Overland Park, Kansas and service to/on the City of Overland Park Police Department, were served with proper and sufficient notice pursuant to K.S.A. 12-105(b) said Notice detailing the This case was originally brought in the District Court of Johnson County, Kansas, but was

removed by the Defendants because a Title 42 Section 1983 claim was originally claimed. All aspects of Kansas substantive and procedural law relating to claims against municipalities and other governmental entities pursuant to the Kansas Tort Claims Act.

## CAUSE OF ACTION

1.. Plaintiff, Ginger Pace Special Friend and Administrator for the ESTATE OF TONY EUGENE THOMAS, mother and Special Friend for S. DOE, a minor and, SH DOE, a minor, is a resident of Overland Park, Kansas, a United States Citizen, and Special Friend representing the interests of the deceased as well as all of his surviving heirs at law.

2. Plaintiff S Doe is the minor child of Tony Eugene Thomas Deceased, and Special Friend Ginger Pace, and who is a resident of Overland Park, Kansas, and a United States Citizen.

3. Plaintiff Sh Doe is the minor child of Tony Eugene Thomas Deceased, and Special Friend Ginger Pace, and who is a resident of Overland Park, Kansas, and a United States Citizen.

4. Defendant John Douglass, at the times of the events described herein was the Chief of Police of the City of Overland Park, Kansas Police Department. He is sued in his individual capacity.

5. Defendant Theresa Poage is an officer of the City of Overland Park Police Department. She is sued in her individual capacity and as an Overland Park police officer.

6. Defendant Andrew Eger is an officer of the City of Overland Park Police Department. He is sued in his individual capacity and as an Overland Park police officer.

7. Defendant John Douglas is the Chief of Police for the City of Overland Park, Kansas Police Department is sued in his official and individual capacity.

8. On or about, December 10, 2006 at approximately 1:41a.m., Tony Eugene Thomas, was shot and killed from a distant range gunshot wound to the chest fired by Overland Park Police Officer Theresa Poage and/or Overland Park Police Officer Andrew Eger.

9. On or about, December 10, 2006, Theresa Poage was a City of Overland Park Police Officer acting individually and on behalf of the City of Overland Park, Kansas, and City of Overland Park Police Department.

10. On or about, December 10, 2006, Andrew Eger was a City of Overland Park Police Officer acting individually and on behalf of the City of Overland Park, Kansas, and City of Overland Park Police Department.

11. At all times herein mentioned Officer Poage's personal police equipment included items that were accessible for immediate use to assist, arrest, apprehend, detain, deter, or otherwise control persons who she made contact with while performing her duties without having to use lethal force to effectuate those duties, protect herself or others.

12. At all times herein mentioned Officer Eger's personal police equipment included items that were accessible for immediate use to assist, arrest, apprehend, detain, deter, or otherwise control persons who he made contact with while performing his duties without having to use lethal force to effectuate those duties, protect himself or others.

13. At all times herein mentioned Officer Poage had a personal communication device that allowed communication with other officers and to the dispatching facility. This personal communication device was on and operable and allowed for audible recording of the events immediately prior to and after the interaction with Tony Eugene Thomas and his shooting death.

14. At all times herein mentioned Officer Eger had a personal communication device that allowed communication with other officers and to the dispatching facility. This personal

communication device was on and operable and allowed for audible recording of the events immediately prior to, and after, the interaction with Tony Eugene Thomas and his shooting death.

15. On or about, December 10, 2006, Officers Theresa Poage, Andrew Eger, and other officers, responded to 9111 Conser, Overland Park, Kansas which is the address our family friend Ms. Jett lived, Overland Park, Kansas pursuant to a 911 call initiated by Jennifer Jett. Jennifer Jett indicated during the 911 call that she believed Mr. Thomas was behaving as if he were under the influence of narcotics. Jennifer Jett informed dispatch that Mr. Thomas had severely cut his forearm and blood was exiting his forearm and reaching the ceiling.

16. During the above-mentioned 911 call, Jennifer Jett did not allege that Mr. Thomas had perpetrated any violence upon her or any other person. Jennifer Jett was seeking medical assistance from law enforcement in handling Mr. Thomas's condition.

17. Jennifer Jett did not express any fear for herself or others during the 911 call. Jennifer Jett did not allege any domestic violence or disturbance between her and Tony Eugene Thomas.

18. Prior to arriving at 9111 Conser, Overland Park, Kansas, Officer Poage, Office Eger, and other responding officers were updated by 911 dispatchers as to the circumstances surrounding their dispatch to the above location. At no time did Dispatch indicate that Tony Eugene Thomas had become violent and/or was a danger to others or himself.

19. Upon arrival and prior to making contact with Tony Eugene Thomas, Officer Poage and Officer Eger confirmed by their own independent observations that no one, including Jennifer Jett, was injured or harmed by Tony Eugene Thomas.

20. Officer Poage and Officer Eger were informed by Jennifer Jett that she was not complaining of being assaulted or otherwise harmed. Her physical appearance and demeanor confirmed that she had not been a victim of assault or any other criminal act which may have been perpetrated by Tony Eugene Thomas.

21. Jennifer Jett informed Officer Poage and Officer Eger her concern about Mr. Thomas and his physical condition, confirming the reason behind her 911 call. Officer Poage and Officer Eger were informed by Jennifer Jett that Tony Eugene Thomas was injured. This information was confirmed by the presence of a large amount of blood throughout the apartment as well as a broken sliding glass door.

22. Officer Poage and Officer Eger searched the apartment of Jennifer Jett for Tony Thomas. He was not located therein.

23. Officer Poage and Officer Eger decided to search the apartment complex for Tony Eugene Thomas.

24. Prior to embarking on the search for Tony Eugene Thomas, Officer Poage and Officer Eger had no reasonable basis to suspect or believe that Tony Eugene Thomas was a danger to himself or others.

25. Prior to embarking on the search for Tony Eugene Thomas, Officer Poage and Officer Eger had no reasonable basis to suspect or believe that Tony Eugene Thomas had committed a criminal act.

26. At no time prior to the shooting of Tony Eugene Thomas did Officer Poage or Officer Eger inquire as to Tony Eugene Thomas' prior criminal contacts with law enforcement. Neither Officer Poage nor Officer Eger made a "wants and warrant" check of Tony Eugene

Thomas prior to determining to use lethal force in attempting to locate him nor prior to the shooting of Tony Eugene Thomas.

27. Officer Poage drew her service revolver upon leaving the apartment to search for Tony Eugene Thomas.

28. Officer Eger drew his service revolver upon leaving the apartment to search for Tony Eugene Thomas.

29. Officer Poage had other devices at her disposal, other than her revolver/lethal force, to utilize when searching for the injured and unarmed Tony Eugene Thomas.

30. Officer Eger had other devices at his disposal, other than his revolver/lethal force, to utilize when searching for the injured and unarmed Tony Eugene Thomas.

31. Officer Poage and Officer Eger located Tony Eugene Thomas in a corridor by following the trail of his blood.

32. Officer Poage and Officer Eger confirmed that Tony Eugene Thomas was injured by observing an open wound on Tony Eugene Thomas' forearm.

33. Officer Poage had her revolver drawn and pointed it at Tony Eugene Thomas.

34. Officer Eger had his revolver drawn and pointed it at Tony Eugene Thomas.

35. Tony Eugene Thomas had been bleeding from his injuries for some time. Officer Poage and Officer Eger had previously observed blood in the apartment and had followed a trail of blood to locate and find Tony Eugene Thomas.

36. Despite other non-lethal means to control and/or assist Tony Eugene Thomas, Officer Poage and Officer Eger used lethal force to assist/control Tony Eugene Thomas.

37. Officer Poage fired her revolver at least 3 times towards and at Tony Eugene Thomas.

38. Officer Poage shot at and caused Tony Eugene Thomas to be killed.

39. Officer Eger fired his revolver at least 3 times towards Tony Eugene Thomas.

40. Officer Eger shot at and caused Tony Eugene Thomas to be killed.

41. After the shooting of Tony Eugene Thomas by Officer Poage and Officer Eger, Tony Eugene Thomas was allowed to exit the corridor. Tony Eugene Thomas was tackled by other officers outside the corridor and placed into handcuffs.

42. Non-lethal force was used by other officers to detain Tony Eugene Thomas outside the corridor.

43. Tony Eugene Thomas died from a distant range gunshot wound.

44. An autopsy was performed on Tony Eugene Thomas. The autopsy performed by Michael S. Handler M.D. at the request of the Johnson County Coroner.

45. The autopsy determined that soot, unburned gunpowder particles, and gunpowder stippling were not visible on the skin surrounding the gunshot wound, indicating the shooting was from a distance range.

46. Michael S. Handler M.D.'s autopsy report did not indicate the presence of soot, unburned gunpowder particles, and/or gunpowder stippling on the clothing of Tony Eugene Thomas.

47. The autopsy determined that Tony Eugene Thomas died of a distant range gunshot wound of his right chest.

48. Defendant, John Douglass, was at the time of the incident in question, Chief of Police for the City of Overland Park Police Department.

49  Defendant Douglass negligently, failed to instruct, supervise, control and/or discipline on a continuing basis, defendants Poage and Eger in performance of their duties to refrain from:

(a) Unlawfully and unreasonably assaulting with a deadly weapon a citizen and otherwise using unreasonable and excessive force before, during and after attempting to make an arrest, whether or not the arrest was lawful;

(b) Unlawfully and unreasonably using excessive force; i.e., using deadly force to combat non-deadly force or causing deadly force in situations that could be controlled by using other means; and

(c) Otherwise depriving a citizen, Tony Eugene Thomas, of his constitutional and statutory rights, privileges, and immunities.

50. Defendant Douglass had knowledge of or, had he diligently exercised his duty to instruct, supervise, control and/or discipline on a continuing basis should have had knowledge that the wrongs that were done, asserted or alleged, or other unlawful acts were going to be committed.

51. Defendant Douglass had the power to prevent or aid in preventing the commission of said wrongs, could have done so, and knowingly and with deliberate indifference of the rights of Tony Eugene Thomas failed or refused to do so.

52. There is an "affirmative link" between plaintiff Tony Eugene Thomas' untimely and unwarranted death and defendant Douglass' failure to instruct, train, supervise, control and/or discipline and that if defendant Douglass had properly carried out his duties defendants Poage and Eger would not have undertaken the acts, errors and omissions, which ultimately resulted in Tony Eugene Thomas' death.

53. The failure to train, instruct, and supervise by defendant Douglass was in violation of clearly established law. Defendant Douglass' failure to supervise was not objectively reasonable and defendant Douglass is not entitled to qualified immunity.

54. Defendant Douglass has a non-delegable duty to train and supervise his employees to avoid injury to members of the public as a result of his deliberate disregard of the public's constitutional rights.

55. Ginger Pace, as Executor of the Estate of Tony Eugene Thomas as well as an heir at law seeks on behalf of Mr. Thomas' estate and other heirs at law compensation for wrongful death and a survival claim.

56. Defendants, each of them, individually and in their official capacities through their acts, errors, and omissions directly and proximately caused the death of Tony Eugene Thomas.

57  Plaintiffs, the Estate of Tony Eugene Thomas, Ginger Pace, S Doe and SH Doe, minor children of Tony E. Thomas as his remaining heirs at law have suffered damage in the form of the loss of a father, and provider, including, but not limited to, loss of support, guidance, companionship, and society.

**WHEREFORE**, plaintiffs pray for judgment against defendants, jointly and severally for compensatory damages in an amount in excess of $75,000, plus the costs of this action, attorney's fees and such other relief as this Court may deem fair and appropriate for the circumstances.

LOUIS S. WEXLER, P.A.

By_____
Louis S. Wexler   #7763
7201 Metcalf Avenue
Overland Park, KS 66204
(913) 831-3685
(913) 831-4398 (fax)
louwexler@aol.com
Attorney for Plaintiffs

**PLAINTIFFS MAKE TIMELY DEMAND FOR TRIAL BY JURY**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the above and foregoing was placed in the U.S. Mail, postage prepaid, to Mr. J. Nick Badgerow, 9401 Indian Creek Parkway, Suite 700 Overland Park, Kansas 66210, this 15 day of February, 2011.

Louis S. Wexler